UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. POTTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-245-ZMB |
| | ) | |
| MICHELLE BUCKNER, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Petitioner Christopher J. Potter's petition for a writ of

habeas corpus under 28 U.S.C. § 2254, as well as a collection of other motions Potter has filed.

Docs. 1, 17–19, 22. Potter seeks to vacate his sentence based on two claims of ineffective assistance

of counsel. Because Potter has failed to show that he was prejudiced by his trial counsel's purportedly

deficient performance, the Court denies his petition and denies the remaining motions as moot.

**BACKGROUND**

**I.      Factual Background**

Potter was charged in St. Charles County Circuit Court "with thirteen counts of first-degree

assault, one count of first-degree property damage, and one count of fleeing the scene of a motor

vehicle accident." Doc. 9-10 (Op.) at 2. Those charges arose out of a series of incidents where

Potter intentionally crashed his large white pickup truck into multiple people's vehicles between

August 2, 2015, and July 5, 2016. *Id.*

During voir dire, the State asked the venire panel several hypothetical questions about an

individual throwing a bowling ball from a highway overpass into oncoming traffic and what

purpose they might have in doing so. *Id.* The State followed up by asking if such an act would

demonstrate an intent to injure and asked if anyone did not agree that anyone throwing "a bowling ball off an overpass intends to cause potentially life-threatening injury." *Id.* After a lack of response, the prosecutor stated that he would take their silence as agreement. *Id.* In closing arguments, the prosecutor made references to the bowling ball hypothetical to reinforce his argument about Potter's intent to cause serious injury. *Id.*

At trial, the State called 25 witnesses, including victim drivers, police officers, crime lab technicians, Potter's ex-girlfriend, and Potter's friend, Mike Johnson. *Id.* at 3. Johnson testified that he was riding with Potter in the truck when Potter deliberately struck several of the vehicles. Doc. 9-1 at 588–600. After Johnson testified that he was not laughing when Potter forced other vehicles off the road, defense counsel attempted to impeach him with the recording of his police interview, in which he admitted to laughing during the crimes. Op. at 4. While the trial court excluded this impeachment, defense counsel was still able to attack Johnson's credibility by highlighting his inconsistent statements during cross-examination of the detective who conducted the interview. *Id.* The jury also saw a videotape of Potter's police interview where he confessed that he had hit two vehicles "by accident" before hearing that he eventually admitted to intentionally forcing vehicles off the road. *Id.* at 3, 8. The State also presented forensic evidence that matched paint samples from Potter's truck to three of the victim's vehicles. *Id.* at 3. At the conclusion of trial, "the State submitted eight first-degree assault charges to the jury which found Potter guilty on each." *Id.* Potter was then sentenced to an aggregate term of 21 years in prison. *Id.*

## II.    Procedural Background

Following Potter's conviction, he appealed his conviction and sentence, which was affirmed by the Eastern District Missouri Court of Appeals. *Id.* Potter next sought post-conviction relief, which was denied by the circuit court and court of appeals. *Id.* at 4, 10. Potter also

unsuccessfully sought transfer to the Missouri Supreme Court. Doc. 12 (Petr. Br.) at 2. After exhausting his state court remedies, Potter now seeks federal relief under section 2254. He timely filed his petition roughly 2 months after the Missouri Supreme Court denied relief. *See* Doc. 1; *Potter v. State*, No. SC100326 (Mo. banc Dec. 19, 2023).

At this stage, Potter raises two claims that his Sixth Amendment right to effective representation was violated due to the deficient performance of his trial counsel. *See* Petr. Br. at 5–26. First, he contends that his attorney was ineffective because he failed to object to the State seeking a commitment to intent during voir dire with an improper hypothetical regarding an individual throwing a bowling ball off an overpass. Doc. 1 at 6. Second, he contends that defense counsel was ineffective by failing to properly impeach Johnson's testimony. *Id.* at 9. Both parties timely filed their response and reply. Docs. 9, 12. Potter also has filed several other motions, including requests to be released on recognizance, for discovery, to prevent transfer, and for a preliminary injunction to be released from prison. Docs. 17, 18, 19, 22.

## LEGAL STANDARD

Potter seeks federal habeas relief under 28 U.S.C. § 2254, which is limited to claims "adjudicated on the merits in State court proceedings." The statute provides that such relief may not be granted unless those proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). And under section 2254(d) "any claim that was adjudicated on the merits in State court proceedings is entitled to deference by the federal courts." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011).

3

To prevail on a claim for ineffective assistance of counsel, the petitioner must show "(1) that counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Springs v. Payne*, 95 F.4th 596, 601 (8th Cir. 2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–89 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which requires a substantial, not just conceivable, likelihood of a different result." *Allen v. United States*, 854 F.3d 428, 432 (8th Cir. 2017) (quotation omitted). Courts assess prejudice "by reweighing the aggravating evidence against the totality of available mitigating evidence." *Springs*, 95 F.4th at 602 (citation omitted).

A section 2254 review where a state court has applied *Strickland* is "doubly deferential because it requires a highly deferential look at counsel's performance through the deferential lens of [AEDPA,] . . . giv[ing] both the state court and the defense attorney the benefit of the doubt." *Roberts v. Payne*, 113 F.4th 801, 814 (8th Cir. 2024) (quotations omitted). The Court "will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quotation omitted).

## DISCUSSION

The Court first examines the merits of Potter's ineffective assistance of counsel claims. Because Potter has failed to show prejudice, his habeas petition fails. [1] Further, the Court will not issue a certificate of appealability because Potter has not made a substantial showing that he was denied his constitutional rights.

---

[1] Accordingly, the Court need not address whether Potter is "in custody." Petr. Br. at 4–5.

4

## I.    Ineffective Assistance of Counsel

Potter contends that, but for the two instances of ineffective assistance of counsel, there is a reasonable possibility that the outcome of his case would have been different. *See* Petr. Br. at 5–26. But a review of the record shows that the state courts reasonably determined that neither ground would have produced a different result given the overwhelming evidence adduced during trial.

### a.   *Voir Dire*

Potter first contends that his counsel was ineffective because he failed to object when the State offered an impermissible line of questions during voir dire. Petr. Br. at 10. Potter further argues that, but for the "bowling ball" hypothetical, the jury would not have found intent to cause serious injury, a critical element of first-degree assault. Petr. Br. at 5–10. The Missouri Court of Appeals applied *Strickland* and held that, while the hypothetical was impermissible, the weight of the evidence indicated there was no prejudice to Potter. Op. at 7. Specifically, while recognizing that "first degree assault requires proof of specific intent," the court noted that "the necessary intent may be based upon circumstantial evidence . . . [as well as] inferred from conduct that would tend to cause death or serious physical injury." *Id.* (quotations omitted). After looking to the weight of the evidence at trial, the court further concluded that "a reasonable juror could infer Potter's specific intent to cause death or serious physical injury from his conduct in ramming his large truck into the back of the victims' vehicles at high speed, sometimes in the dark, which forced the vehicles to lose control." *Id.*

This Court may address the deficient-performance or prejudice prongs in either order and may disregard one prong altogether there is an insufficient showing on the other. *Phillips v. Brewer,* 764 F. Supp. 3d 837, 850 (E.D. Mo. 2025). Even assuming Potter's counsel was deficient in not objecting during voir dire, Potter has failed to demonstrate prejudice. While the reviewing

5

court indicated that the "bowling ball" hypothetical was improper and "left the jurors little latitude to decide the issue of Potter's intent for themselves," it found no likelihood of a different outcome in light of strong circumstantial evidence of specific intent. Op. at 7–8. That conclusion is supported by testimony that Potter used his 18,000-pound truck to intentionally ram multiple vehicles off the road, with some incidents happening at high speeds[2] and at night. *See, e.g.*, Doc. 9-1 at 600, 701, 703, 804, 927. Indeed, under Missouri law, "intent may be inferred from conduct that would tend to cause death or serious physical injury," Doc. 9-10 at 7 (citation omitted), and that is a natural conclusion from the conduct here. Nor do any of the cases Potter cites undermine the conclusion that he was not prejudiced. *See Watkins v. Stenseth*, 2024 WL 3678929, at \*5 (D. Minn. June 28, 2024) (deferring to a state court's finding of no prejudice due to alternative circumstantial evidence offered at trial to prove intent). Even assuming counsel did successfully object to the state's line of questioning, there is no realistic likelihood—much less a substantial one—of a different result. Accordingly, the Court denies Potter's first claim.

### b. Impeachment

Potter's second claim is that defense counsel was ineffective because he failed to impeach Johnson with a prior recorded statement. Doc. 1 at 9. Given that Johnson was the only eyewitness who put Potter as the driver of his truck at the time of the incidents, Potter argues that successfully impeaching him would have changed the outcome of the trial. *Id.* This claim is even less meritorious than the first, as defense counsel established the same point through another witness.

Failure to impeach may constitute ineffective assistance of counsel only when "there is a reasonable probability that, absent counsel's failure to impeach, the jury would have had

---

[2] Contrary to Potter's assertion that there was "no evidence that [his] truck was traveling at high speed or above posted speed limits," Petr. Br. at 7, one of the witnesses described a truck "flying by" them before crashing into another car, *see* Doc. 9-1 at 804.

reasonable doubt of [Potter's] guilt" *United States v. Orr*, 636 F.3d 944, 953 (8th Cir. 2011) (citation omitted). The Missouri Court of Appeals noted that while defense counsel was unable to directly impeach Johnson at trial, he was able to draw out the inconsistent statements during cross-examination of the detective who interrogated Johnson. Op. at 10. Significantly, defense counsel made explicit reference to that inconsistent statement and attacked Johnson's credibility on this basis in his closing statement. *Id.* As such, there was no showing of prejudice because defense counsel was able to "successfully elicit[] the information that he wanted to bring to the jury's attention." *Id.* After examining the evidence in the record, the Court fully agrees with the reviewing court's determination. Accordingly, the Court denies Potter's second and final claim.[3]

## II.    Certificate of Appealability

For the reasons stated above, the Court also finds that Potter has not made a substantial showing of the denial of a constitutional right, which he must do before this Court could issue a certificate of appealability. 28 U.S.C. § 2253(c). To make a substantial showing, Potter would have to show that the issues are debatable among reasonable jurists, a court could resolve the "issues differently, or the issues deserve further proceedings." *Shockley v. Crews*, 696 F. Supp. 3d 589, 707 (E.D. Mo. 2023) (quoting *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997)). Here, the issues raised by Potter lack debatable merit, the Court could not resolve them differently, and the issues do not deserve further proceedings. As such, the Court denies Potter a certificate of appealability.

### CONCLUSION

Accordingly, the Court **DENIES** Petitioner Christopher J. Potter's [1] Petition for Writ of Habeas Corpus and declines to issue a certificate of appealability because Potter has not made a substantial showing of the denial of a federal constitutional right. Further, the Court **DENIES** as

---

[3] Further, because Potter's underlying petition lacks merit, his other pending motions are moot.

moot his [17] Motion to be Released on Recognizance and/or Surety, [18] Motion for Leave of Court for Requesting Discovery, [19] Motion to Prevent Transfer of Petitioner, and [22] Motion for Preliminary Injunction.

The Court will issue a separate Judgment to accompany this Memorandum and Order.

So ordered this 31st day of March 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE